## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAVIS CLEVELAND SMITH**                                    **CIVIL ACTION**

**VERSUS**                                                               **NO. 14-1153-DEK**

**MARLIN GUSMAN, ET AL.**

### ORDER AND REASONS

Plaintiff, Davis Cleveland Smith, filed the instant civil action pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman, Earl Weaver, Chief Bordelon, Melvin Howard, Mike Tidwell, Robert Martin, Charles Reed, Mary Goodwin, Phil Barre, Dr. Samuel Gore, Carlos Louque, and Bonita Pittman.  In this lawsuit, plaintiff, who is no longer incarcerated, claimed that he was subjected to unconstitutional conditions while confined within the Orleans Parish Prison system. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2]  Plaintiff has filed no opposition to that motion.[3]

---

[1]     Rec. Doc. 14.

[2]     Rec. Doc. 17.

[3]     The motion for summary judgment was noticed for submission on April 22, 2015.  Rec. Doc. 17-3.  This Court's Local Rules provide:  "Each party opposing a motion must file and serve a memorandum in opposition to the motion with citations of authorities no later than eight days before the noticed submission date."  Local Rule 7.5.

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Having carefully reviewed the unopposed motion, the Court finds that the defendants are entitled to judgment as a matter of law for the following reasons.

As noted, plaintiff alleges that, while he was incarcerated within the Orleans Parish Prison system as a pretrial detainee,[4] he was subjected to unconstitutional conditions of confinement. It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted). Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of mere inconveniences. Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008). As explained below, it is apparent that plaintiff's numerous complaints regarding the conditions of his confinement concerned inconveniences which did not constitute "punishment" or otherwise rise to the level of constitutional violations.

In his complaint, plaintiff provided a laundry list of grievances. For example, he argued that the jail was generally in poor condition, alleging that tiles were missing from the bathroom floor, a light fixture on the tier was "out and hanging from the ceiling," and camera wiring was exposed.[5] However, he has presented no evidence whatsoever that those conditions resulted from a punitive

---

[4]   Rec. Doc. 3, p. 3.

[5]   Rec. Doc. 3, p. 12.

motive, rather than from mere negligence.  Further, the conditions themselves, while lamentable, were not inherently unconstitutional.  See, e.g., Lee v. Hennigan, 98 Fed. App'x 286 (5th Cir. 2004) (rejecting a claim that defendants violated an inmates "constitutional rights by maintaining unsafe shower facilities," noting that problem did not result from a punitive intent and that "[t]he fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment").

Plaintiff also complained that the jail was unclean.[6]  Obviously, there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional.  See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).  That said, it must be remembered that, although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be."  McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions.").  Again, while the conditions described by plaintiff may have been unpleasant, they were not so egregious as to be unconstitutional.

Plaintiff next claimed that there was mold and rust.[7]  However, the jurisprudence has repeatedly held that the mere fact that mold is present in a jail does not render an inmate's

---

[6]   Rec. Doc. 3, p. 12.

[7]   Rec. Doc. 3, p. 13.

confinement unconstitutional.  See, e.g., Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").  Similarly, the presence of rust in a jail does not rise to the level of a constitutional violation or otherwise warrant relief in a federal civil rights action.  See, e.g., Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015); Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015); Penn v. Jones, Civ. Action No. 13-0830, 2014 WL 31351, at *2 (W.D. La. Jan. 2, 2014).

　　　Plaintiff also complained that "gnats [were] numerous and an ongoing problem."[8]  However, the mere presence of pests, such as gnats, likewise does not amount to a constitutional violation.

---

[8]　　Rec. Doc. 3, p. 12.

See, e.g., Simmons, 2015 WL 151113, at *4; Clark v. Gusman, Civ. Action No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), adopted, 2012 WL 1825302 (E.D. La. May 18, 2012); Murray v. Edwards County Sheriff's Department, 453 F. Supp. 2d 1280, 1292 (D. Kan. 2006), aff'd, 248 Fed. App'x 993 (10th Cir. 2007); Smith v. Barber, 316 F. Supp. 2d 992, 1028-29 (D. Kan. 2004).

Plaintiff next complained of various plumbing problems. For example, he alleged that not all showers were operational, that not all toilets worked properly, and that inmates were without access to hot water for a period of two weeks.[9] While such plumbing problems are undoubtedly annoying, they are not actionable under federal law because the Constitution does not protect inmates from those types of "life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982); Maddox, 2015 WL 1274081, at *4; Scott v. Gusman, Civ. Action No. 10-2706, 2011 WL 666851, at *7 (E.D. La. Feb. 14, 2011); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *5 (E.D. La. May 11, 2010). Plaintiff's claim concerning the lack of hot water for a two-week period similarly fails because inmates simply have no constitutional right to hot water. Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986); Johnson v. Desoto County Sheriff Department, Civ. Action No. 13cv43, 2013 WL 3944284, at *2 (N.D. Miss. July 31, 2013).

Plaintiff also complained that the ceiling leaked.[10] However, such "leaks, while unpleasant, are not unconstitutional." Bean v. Pittman, Civ. Action No. 14-2210, 2015 WL 350284, at *4 (E.D. La. Jan. 26, 2015); accord Davies v. Fuselier, No. 00-30554, 2001 WL 360709, at *3 (5th Cir. Mar. 15, 2001); Simmons v. Gusman, Civ Action No. 14-1907, 2015 WL 151113, at *5 (E.D. La. Jan.

---

[9]    Rec. Doc. 3, p. 12.

[10]    Rec. Doc. 3, p. 12.

12, 2015); McAllister v. Strain, Civ. Action No. 09-2824, 2009 WL 5088752 (E.D. La. Dec. 23, 2009).

Plaintiff next complained that the air conditioning system remained on even during the winter.[11]  It cannot be doubted that exposure to "extreme cold" is actionable in some circumstances.  See, e.g., Palmer v. Johnson, 193 F.3d 346, 353 (5th Cir. 1999).  Here, however, there is no evidence that the air conditioning subjected plaintiff to "extreme cold" or that he suffered from any type disability which made him particularly vulnerable to harm as a result of uncomfortably cool conditions.  Accordingly, his allegations fall far short of what is required to state a cognizable § 1983 claim.

Plaintiff also complained that inmates were denied "yard privileges for at least two months."[12]  Even if that is true, it does not rise to the level of a constitutional violation.  Even severe restrictions on or complete denials of outdoor recreation have been found to be constitutional.  See, e.g., Chavis v. Fairman, No. 92-C-7490, 1994 WL 55719, at *5 (N.D. Ill. Feb. 22, 1994) ("Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity."), aff'd, 51 F.3d 275 (7th Cir. 1995); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D. La. May 11, 2010); Broussard v. Phelps, Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D. La. Oct. 6, 1987) (no constitutional deprivation shown where prisoner was allowed outdoor recreation only twice in a seventeen month period in light of the fact

---

[11]   Rec. Doc. 3, p. 12.

[12]   Rec. Doc. 3, p. 13.

that he was allowed to leave his cell for an hour each day and cell was large enough for indoor exercise).

Plaintiff next claimed that inmates were "housed in a mixture of different offenses and classifications and mental health problems."[13]  While such a practice is not optimal, it also is not *per se* unconstitutional.  For example, as United States Magistrate Judge Joseph C. Wilkinson, Jr., in an opinion subsequently adopted by United States District Judge Carl Barbier, explained with respect to an analogous claim that pretrial detainees were being housed with convicted prisoners:

> In <u>Jones v. Diamond</u>, 636 F.2d 1364 (5th Cir. 1981), the Fifth Circuit stated that
>
>> [t]he confinement of pretrial detainees *indiscriminately* with convicted persons is unconstitutional unless such a practice is 'reasonably related to the *institution's interest in maintaining jail security,' or physical facilities do not permit their separation.  Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted ....*  Nonetheless, pretrial detainees have a due process right to be considered individually *to the extent security and space requirements permit.*
>
> <u>Id</u>. at 1374 (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 531 (1979)) (additional citations omitted) (emphasis added).  Thus, the Fifth Circuit in <u>Jones</u> recognized that the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification, <u>Pembroke v. Wood County</u>, 981 F.2d 225, 228 (5th Cir. 1993), but it also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.
>
> Significantly, the classification of inmates is an administrative function of the prison.  <u>Jones</u>, 636 F.2d at 1376.  Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  <u>Bell</u>, 441 U.S. at 547-48; <u>Smith v. Bingham</u>, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification ... only if state law contains 'substantive predicates' limiting the prison

---

[13]   Rec. Doc. 3, p. 13.

administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law."  Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification.  The classification of prisoners is a matter within the discretion of prison officials.  Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials."  Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

The Fifth Circuit's decision in Jones v. Diamond specifically states that limitations on physical facilities might justify housing pretrial detainees with convicted inmates, that pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that imposition of greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent.  Jones, 636 F.2d. at 1374.

McKay v. Terrebonne Parish Sheriff's Office, Civ. Action No. 06-5570, 2007 WL 163059, at *4-5 (E.D. La. Jan. 17, 2007) (footnote omitted); accord Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *4-5 (E.D. La. Oct. 23, 2009).  In the instant case, plaintiff does not allege that the housing decisions within the Orleans Parish Prison system were made indiscriminately without justification or that the decisions were not reasonably related to the institution's interest in maintaining jail security.  Accordingly, his conclusory and unsupported claim must be dismissed.

Plaintiff also claimed that the jail was "always overcrowded and inmates sleep on the floor."[14]  However, the mere fact that inmates are confined in overcrowded conditions does not in

---

[14]   Rec. Doc. 3, p. 13.

and of itself amount to a constitutional deprivation.  See, e.g., Rhodes v. Chapman, 452 U.S. 337, 347-50 (1981); Castillo v. Cameron County, Texas, 238 F.3d 339, 354 (5th Cir. 2001) ("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional."); Price v. New Orleans Parish Criminal Sheriff, Civ. Action No. 09-3573, 2009 WL 2139702, at *3 (E.D. La. July 13, 2009); Thompson v. Stalder, Civ. Action No. 06-659, 2008 WL 874138 (M.D. La. April 1, 2008) ("[T]he law is clear that the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension.  It has been held that such a claim, without more, does not violate an inmate's constitutional rights."); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007).  Further, as to plaintiff's contention that inmates sleep on the floor, that allegation is likewise insufficient to state a nonfrivolous claim.  There is no allegation that inmates were without mattresses, and requiring inmates to sleep on the floor with a mattress is permissible because the Constitution does not require elevated beds.  See Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986); accord Sanders v. Kingston, 53 Fed. App'x 781, 783 (7th Cir. 2002); Finfrock v. Jordan, No. 95-3395, 1996 WL 726426, at *1 (7th Cir. Dec. 6, 1996); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); McCarty v. McGee, Civ. Action No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008).

Plaintiff next complained that inmates were "denied basic grooming tools such as nail clippers."[15]  As an initial matter, the Court notes that plaintiff has not alleged that nail clippers were unavailable for purchase through the jail commissary.  Further, in any event, a denial of nail clippers

---

[15]  Rec. Doc. 3, p. 13.

does rise to the level of a constitutional deprivation.  See, e.g., Harris v. Fischer, No. 11 Civ. 6260, 2014 WL 3859242, at *27 (S.D.N.Y. Aug. 1, 2014); Harbridge v. Pasillas, No. 1:10-cv-00473, 2011 WL 130157, at *14-15 (E.D. Cal. Jan. 14, 2011), reconsideration granted in part on other grounds, 2012 WL 639476 (E.D. Cal. Feb. 24, 2012); Banks v. York, 515 F. Supp. 2d 89, 106 (D.D.C. 2007).

Plaintiff also complained that clothing and bedding was "hard to obtain" and in poor condition.[16]  Obviously, "prison officials must ensure that inmates receive adequate ... clothing." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Similarly, officials are generally required to provide necessary bedding, although it is not *per se* unconstitutional to deprive an inmate of bedding for a limited period of time.  See, e.g., McAllister v. Strain, Civ. Action No. 08-5174, 2009 WL 500560, at *2-3 (E.D. La. Feb. 25, 2009).  Here, however, plaintiff's allegations are insufficient to state a nonfrivolous claim.  For example, he does not allege that he *personally* was ever actually *denied* clothing or bedding for any reason, much less for a punitive reason.  And while the items provided may not have been to his liking, that simply is not the test for constitutionality.  Therefore, his bare allegations challenging the general availability and acceptability of clothing and bedding fall far short of what is required to state a deprivation of a constitutional magnitude.

Plaintiff next complained that the prison laundry sometimes lost items sent out for cleaning. Even if that is true, a negligent loss of an inmate's clothing by prison officials is not cognizable in a federal civil rights action if an adequate state remedy exists.  Loftin v. Thomas, 681 F.2d 364, 365 (5th Cir. 1982).  It is clear that "Louisiana provides an adequate tort postdeprivation remedy for procedural due-process claims relating to negligent or intentional property loss claims by inmates."

---

[16]    Rec. Doc. 3, p. 15.

11

Gross v. Normand, 576 Fed. App'x 318, 320 (5th Cir. 2014), cert. denied, 135 S. Ct. 1498 (2015). Therefore, even if plaintiff experienced such a loss, and even if the item lost was his personal property (as opposed to jail property), any claim for that loss must be brought in the state courts.

In summary, the Court notes that it is not unsympathetic to plaintiff's various complaints concerning the conditions of his confinement. However, for the reasons explained herein, the issue before the Court is not whether the conditions of plaintiff's confinement were unpleasant or uncomfortable – rather, it is only whether the conditions were *unconstitutional*. Although the conditions alleged in this case leave much to be desired, they simply were not unconstitutional. Accordingly, these claims concerning the general conditions of confinement must be dismissed.

Lastly, plaintiff also claimed that he was denied adequate medical care while incarcerated. Specifically, he alleged that he received no medical care for an injury to his wrist on August 5, 2013. He further alleged that he waited five months for a dental visit.[17]

Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one which is violated only if the inmates' "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir.

---

[17]   Rec. Doc. 3, p. 14.

2006).  Here, there is no evidence that either plaintiff's injured wrist or dental problems rose to the level of a "serious medical need."

Further, in any event, even if plaintiff could demonstrate that one or both of his conditions constituted a "serious medical need," he cannot show the "deliberate indifference" necessary to support his claim.  Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet.  It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment.  And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In support of their motion, the defendants have provided the Court with a certified copy of plaintiff's mail records from the jail.  Those records include the following documentation concerning plaintiff's injured wrist and dental problems:

8/7/13    An x-ray was taken of plaintiff's wrist.  The result was normal, showing no
          fracture.[18]

---

[18]   Rec. Doc. 17-6, p. 30.

9/16/13      Plaintiff was seen by a nurse practitioner for complaints of continuing wrist pain.  The nurse practitioner noted that there was "no swelling/redness," that there was "good ROM," and that "x-ray neg for fracture."  Nevertheless, she prescribed ibuprofen as needed.[19]

10/31/13     Plaintiff submitted a sick call request stating:  "I put a dental sick call in back in July or August and never received any feedback.  My head still hurts from a few teeth that are giving me problems, and I would still like to have them checked out.  Thank you."  The evaluating nurse noted that there was  "∅ visible swelling or deformity to cheeks" but referred plaintiff to a dentist.[20]

12/11/13     Plaintiff was seen by a dentist who extracted one tooth and prescribed ibuprofen and amoxicillin.[21]

12/19/13     Plaintiff submitted a sick call request for another dental visit.  He was again referred to the dentist.[22]

1/15/14      Plaintiff was seen by a dentist who extracted one tooth and prescribed ibuprofen, amoxicillin, and Ultram.[23]

---

[19]   Rec. Doc. 17-6, p. 22.

[20]   Rec. Doc. 17-6, p. 6.

[21]   Rec. Doc. 17-6, p. 33.

[22]   Rec. Doc. 17-6, p. 4.

[23]   Rec. Doc. 17-6, p. 31.

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). That is certainly the case here.

Clearly, plaintiff's complaint regarding his injured wrist was not ignored. On the contrary, his wrist was x-rayed within two days of the purported injury. Although that x-ray was *normal* and showed *no* fracture, he was nevertheless prescribed pain medication as needed to minimize any discomfort.

In light of the x-ray results, it is unclear what additional medical care plaintiff believes was necessary. However, even if he believes that more should have been done for him, that is of no moment. Absent exceptional circumstances, an inmate's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert, 463 F.3d at 346. And, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges. Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be

lightly second-guessed in a federal civil rights action.").  There is no basis whatsoever to engage in such second-guessing here.

The foregoing conclusion also is not changed by the fact that plaintiff's medical care "may not have been the best money could buy."  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).  In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).  Rather, claims of negligence or medical malpractice present issues of *state* law for *state* courts, not federal constitutional issues for a federal court.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received for his injured wrist was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether he had a serious medical need which was met with deliberate indifference.  He did not. Accordingly, his medical claim concerning his injured wrist must be dismissed.

Plaintiff's claim concerning his dental care fares no better.  Although he alleged that he first submitted a sick call request for dental care in July of 2013, his records contain no such request.

16

Rather, although a dental problem was noted during his general health assessment on July 9, 2013, the notes from that assessment, which was signed by plaintiff, stated:  "pt will initiate dental s/c request."[24]   However, he did not bother to submit such a sick call request for dental care until more than three months later on October 31, 2013.  After submitting that request, he was then seen by the dentist approximately six weeks later on December 11, 2013.  Even if plaintiff considers that to have been an unwarranted delay, mere delay is insufficient to create § 1983 liability unless substantial harm resulted.  Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993); Bennett v. Louisiana ex rel. Department of Public Safety and Corrections, No. 07-31189, 2009 WL 102080, at *4 (5th Cir. Jan. 15, 2009); Davis v. Kuykendall, 242 Fed. App'x 961, 962-63 (5th Cir. 2007).  Here, plaintiff has not alleged, much less submitted evidence to prove, that substantial harm resulted from the delay. Therefore, his claim concerning his dental care must likewise be dismissed.

For all of the foregoing reasons, the Court finds that the defendants are entitled to judgment as a matter of law.  Accordingly,

**IT IS ORDERED** that the defendants' unopposed motion for summary judgment, Rec. Doc. 17, is **GRANTED** and that plaintiff's federal civil rights claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this fourth day of May, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[24]   Rec. Doc. 17-6, pp. 8-9.

17